UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

FRANCISCO SANTIAGO,

        Plaintiff,

v.                                Case No.  8:21-cv-588-SPF

KILOLO KIJAKAZI,
Commissioner of the Social
Security Administration,[1]

        Defendant.
_____/

**ORDER**

    Plaintiff seeks judicial review of the denial of his claim for a period of disability
and disability insurance benefits ("DIB").  As the Administrative Law Judge's ("ALJ")
decision was based on substantial evidence and employed proper legal standards, the
Commissioner's decision is affirmed.

    **I.**        **Procedural Background**

    Plaintiff filed an application for a period of disability and DIB (Tr. 167-73).  The
Commissioner denied Plaintiff's claim both initially and upon reconsideration (Tr. 88-
90, 92-97).  Plaintiff then requested an administrative hearing (Tr. 98).  Per Plaintiff's
request, the ALJ held a hearing at which Plaintiff appeared and testified (Tr. 30-54).
Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not
disabled and accordingly denied Plaintiff's claims for benefits (Tr. 16-29).  Subsequently,

_____

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021,
and is substituted as Defendant in this suit pursuant to Rule 25(d) of the Federal Rules of
Civil Procedure.

Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 155-58, 5-10).  Plaintiff then timely filed a complaint with this Court (Doc. 1).  The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

II.     **Factual Background and the ALJ's Decision**

Plaintiff, who was born in 1975 and obtained a high school education, claimed disability beginning June 25, 2016, when he fell off a cement truck at work and injured his ankle, back, neck, and shoulder (Tr. 21-22, 24).  Plaintiff's past relevant work experience included work as a construction laborer (*Id.*).  Plaintiff alleged disability due to herniated and bulging discs in his back and neck, chronic pain, limited mobility, and left ankle, right shoulder, and left knee impairments (Tr. 57).

In rendering the administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through December 31, 2021 and had not engaged in substantial gainful activity since June 25, 2016, the alleged onset date (Tr. 21).  After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: degenerative disc disease, osteoarthritis, neuropathy, and degenerative joint disease (Tr. 21).  Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (*Id.*).  The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R.

§ 404.1567(a) with additional limitations (Tr. 22 ).[2]  In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence (*Id.*).

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), the ALJ determined Plaintiff could not perform any past relevant work (Tr. 24).  But given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as order clerk, document preparer, and surveillance systems monitor (Tr. 25). Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (*Id.*).

III.    **Legal Standard**

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months.   42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).   A "physical or mental impairment" is an impairment that results from anatomical, physiological, or

---

[2] Specifically, Plaintiff's RFC limited him to no climbing on ladders, ropes, or scaffolds and only occasional climbing on ramps and stairs, balancing, stooping, kneeling, crouching, or crawling. Plaintiff must avoid even moderate exposure to hazards and is limited to only occasional overhead reaching (Tr. 22).

psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, to regularize the adjudicative process, promulgated the detailed regulations currently in effect.  These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920.  If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary.  20 C.F.R. §§ 404.1520(a), 416.920(a).  Under this process, the ALJ must determine, in sequence, the following:  whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work.  If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience.  20 C.F.R. §§ 404.1520(a), 416.920(a).  A claimant is entitled to benefits only if unable to perform other work.  *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(g), 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (internal quotation marks omitted)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).   While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted).

In reviewing the Commissioner's decision, the court may not re-weigh the evidence or substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision.   *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).   The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal.   *Keeton*, 21 F.3d at 1066. However, a harmless error does not constitute a ground for reversal. *See Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983). The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied.   42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

## IV.   Analysis

Plaintiff argues the ALJ's RFC determination is unsupported by substantial evidence, and the ALJ failed to adequately consider the claimant's subjective complaints of pain (Tr. 13-21, 30-33).

5

### A. Plaintiff's RFC

Plaintiff contends the ALJ's RFC formulation is unsupported by substantial evidence because the ALJ "fails to discuss the majority of the medical evidence in [Plaintiff's] case." (Doc. 27 at 13).   According to Plaintiff, the ALJ parsed the record, cherry picking only those findings that bolstered his determination that Plaintiff can perform sedentary work.   Plaintiff points out that, "[i]n his seven-page decision, the ALJ spends less than one half page discussing the treatment notes from Mr. Santiago's treating orthopedist, Dr. Wilson, his treating pain management specialist, Dr. Sidhom[,] and Dr. Scott[,] who treated [Plaintiff] for his left ankle and did surgery on his left ankle on June 12, 2017." (*Id*.).   The Commissioner responds that substantial evidence supports the ALJ's RFC determination (*Id.* at 30), and the Court agrees.

At step four of the sequential evaluation process, the ALJ assesses the claimant's RFC and ability to perform past relevant work.   *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545.   To determine a claimant's RFC, an ALJ assesses what a claimant can do in a work setting despite any physical or mental limitations caused by his or her impairments and related symptoms.   20 C.F.R. § 404.1545(a)(1).   In rendering the RFC, the ALJ must consider the medical opinions in conjunction with all the other evidence of record and must consider all the medically determinable impairments, including impairments that are not severe, and the total limiting effects of each.   20 C.F.R. §§ 404.1520(e), 404.1545(a)(2), (e); *see Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) (stating that the "ALJ must consider the applicant's medical condition taken as a whole").

An ALJ may not arbitrarily reject or ignore uncontroverted medical evidence. *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986) (administrative review must be of the entire record; accordingly, the ALJ cannot point to evidence that supports the decision but disregard other contrary evidence). Additionally, although there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, the ALJ has the basic obligation to develop a full and fair record. *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005). At bottom, a claimant's RFC is a formulation reserved for the ALJ, who, as always, must support his or her findings with substantial evidence. *See* 20 C.F.R. § 404.1546(c); *Beegle v. Comm'r of Soc. Sec. Admin.*, 482 F. App'x 483, 486 (11th Cir. 2012) ("A claimant's residual functional capacity is a matter reserved for the ALJ's determination, and while a physician's opinion on the matter will be considered, it is not dispositive."); *Cooper v. Astrue*, 373 F. App'x 961, 926 (11th Cir. 2010) (the assessment of a claimant's RFC and corresponding limitations are "within the province of the ALJ, not a doctor").

Here, Plaintiff contends the ALJ erred by overlooking evidence from Plaintiff's orthopedic surgeons (Arnold Wilson, M.D. and Kevin Scott, M.D.) and pain management specialist (George Sidhom, M.D.) that contradicted the ALJ's RFC formulation. This is without merit. Although the ALJ did not refer to Drs. Wilson, Scott, and Sidhom by name in his decision, he referred to their treatment notes (found in the administrative record at Exhibits 2F, 4F, 6F, 7F, 10F, and 11F). The ALJ stated:

> [W]hile the claimant's records show multiple physical impairments with corresponding limitations since the alleged onset date, the objective findings in evidence establish the continuing ability to perform sedentary exertional work. Specifically, records show that on June 25, 2016, the claimant

experienced a work-related fall (Ex. 6F/10). Diagnostic imaging has revealed left ankle degeneration (Exs. 1F/3-4, 2F/19-20) and examinations revealed back, ankle, foot, and shoulder pain (*see e.g.* Ex. 1F). However, only four months following the fall, the claimant's treating physician, Alvin Bergman, M.D., opined that the claimant could perform light duty work with some limitations, including involving overhead reaching (Ex. 1F). In June 2017, following continued ankle-related symptoms, the claimant underwent arthroscopic debridement (Ex. 2F) with subsequent physical therapy (Ex. 3F); and in October 2017, bilateral neuropathy (Ex. 5F). Again, late 2017 examinations show intact strength of the right shoulder and only minimal knee tenderness (Ex. 6F).

Finally, the claimant has continued treatment into 2019; however, these records do not reflect debilitation limitations (*see* Exs. 7F-11F). For example, a November 2018 examination revealed normal sensation, no motor weakness or atrophy, intact coordination, and only slightly antalgic gait (Ex. 10F/4-6).

(Tr. 23).

Although Plaintiff characterizes this as a cursory consideration, this is not a basis for remand where the ALJ considers the record as a whole and supports his decision with substantial evidence. *See* 20 C.F.R. § 404.1546(c); *Beegle*, 482 F. App'x at 486. Here, he has done so. In fashioning Plaintiff's RFC for sedentary work, the ALJ also considered the February 2018 assessment of Gary Buffington, M.D., a state agency medical consultant who reviewed the medical evidence to date (citing Drs. Wilson and Scott's findings) and determined Plaintiff could occasionally lift and/or carry 20 pounds and could frequently lift and/or carry 10 pounds (the exertional requirements of light work) (Tr. 75-77). Plaintiff could stand and/or walk for a total of six hours in an eight-hour workday and sit for about six hours in an eight-hour workday (*Id.*).

Plaintiff emphasizes that Dr. Buffington, when he reviewed Plaintiff's medical records on February 19, 2018 and assessed him capable of light work, did not have

access to either the treatment record from Plaintiff's February 9, 2018 appointment with Dr. Wilson or Plaintiff's 2018-2019 treatment records from Brandon Pain Clinic (Doc. 27 at 15).  Dr. Wilson's February 2018 treatment note indicates Plaintiff had left knee, right shoulder, and lumbar spine pain, was using a single prong cane "because he said that his back has been giving out," and was seeing a pain management doctor (Tr. 345). It does not undermine the ALJ's RFC determination – in fact, Dr. Wilson opined that Plaintiff had worsening symptoms because he had not complied with his prescribed physical therapy (*Id.*).  Regarding Dr. Sidhom's records from Brandon Pain Clinic, the ALJ stated they "revealed normal sensation, no motor weakness or atrophy, intact coordination, and only slightly antalgic gait." (Tr. 23).[3]  Additionally, medical consultant Douglas Chang, M.D. also reviewed the evidence and, in August 2018, concurred with Dr. Buffington's RFC assessment (R. 363-64).

At this point, without stating so head-on or citing the relevant legal standard, Plaintiff implies the ALJ should have afforded Dr. Wilson's records more weight.  Prior to March 27, 2017, SSA regulations codified the treating physician rule, which required the ALJ to assign controlling weight to a treating physician's opinion if it was well supported and not inconsistent with other record evidence. *See* 20 C.F.R. § 404.1527(c).

---

[3] In November 2018, Dr. Sidhom noted that Plaintiff had been "receiving pain management therapy from a physician in New York [Dr. Wilson] in the form of Hydrocodone 10 mg three tablets per day.  This is until September, 2018 [when] Winn-Dixie settled." (Tr. 386-87).  Plaintiff reported that his average pain level was a 5 out of 10, and "his pain is eased by using medication therapy." (Tr. 387-88).  Dr. Sidhom recorded that Plaintiff had 100% range of motion in his cervical spine, 70% range of motion in his lumbar spine, and negative Patrick's and straight leg tests bilaterally.  He also observed that Plaintiff walked without an assistive device (Tr. 389).

9

Under the treating physician rule, if an ALJ assigned less than controlling weight to a treating physician's opinion, he or she had to provide good cause for doing so. *See Winschel v. Comm'r of Soc. Sec*, 631 F.3d 1176, 1178-79 (11th Cir. 2011). Good cause existed "when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (citation omitted).

But in this case, revised SSA regulations (published on January 18, 2017, and effective on March 27, 2017) apply because Plaintiff filed his claim on August 24, 2017 (*see* Tr. 19). As the SSA explained, "under the old rules, courts reviewing claims tended to focus more on whether the agency sufficiently articulated the weight we gave treating source opinions, rather than on whether substantial evidence supports our final decision ... these courts, in reviewing final agency decisions, are reweighing evidence instead of applying the substantial evidence standard of review, which is intended to be highly deferential to us." Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5853 (Jan. 18, 2017). The new regulations require an ALJ to apply the same factors when considering the opinions from *all* medical sources. 20 C.F.R. § 404.1520c(a). As to each medical source, the ALJ must consider: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) "other factors that tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 404.1520c(c). The first two factors, however, are the most important. "Under the new rule, the SSA will consider the persuasiveness of all medical

opinions and evaluate them primarily on the basis of supportability and consistency." *Mackey v. Saul*, 2020 WL 376995, at *4, n. 2 (D.S.C. Jan. 6, 2020), citing 20 C.F.R. § 404.1520c(a),(c)(1)-(2) (while there are several factors ALJ must consider, "[t]he most important factors ... are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section).").

The new regulations also change the standards an ALJ applies when articulating his or her assessment of medical source opinions.  As mentioned above, an ALJ need not assign specific evidentiary weight to medical opinions based on their source. *See Tucker v. Saul*, No. 4:19-cv-759, 2020 WL 3489427, at *6 (N.D. Ala. June 26, 2020).  And while the ALJ must explain how he or she considered the supportability and consistency factors, the ALJ need not explain how he or she considered the other three factors.[4]  20 C.F.R. § 404.1520c(b)(2).  Under the new regulations, the ALJ does not need to "give good reasons" for the weight he or she assigns to treating source opinions. *Compare* 20 C.F.R. § 404.1527(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's medical opinion.") *with* 20 C.F.R. § 404.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources.").  In *Harner, v. Social Security Administration, Commissioner*, No. 21-12148 (11th Cir. June 27,

---

[4] The exception is when the record contains differing but equally persuasive medical opinions or prior administrative medical findings about the same issue. *See* 20 C.F.R. § 404.1520c(b)(3).

2022), the Eleventh Circuit recently affirmed that these new regulations eliminate the treating physician rule.

Here, on July 29, 2016 – three days after his workplace accident – Plaintiff saw Dr. Wilson at his New York office (Plaintiff moved to Florida in August 2016 to be closer to his four children) (Tr. 340).   Plaintiff reported neck, low back, and right shoulder pain, although x-rays of Plaintiff's cervical and lumbar spine showed no acute abnormalities (*Id*.).   From that point until February 2018, Dr. Wilson treated Plaintiff approximately once every two months, ordering physical therapy (to be performed in Florida), prescribing pain medications, ordering MRIs, and eventually performing arthroscopic surgery on Plaintiff's right shoulder in January 2017 (Tr. 329-60).   For his appointments with Dr. Wilson, Plaintiff told an agency employee that he flew from Florida to New York, stayed with his mother-in-law in her walk-up apartment, and navigated trains and buses to get to Dr. Wilson's office (Tr. 72).   Treatment notes from June 28, 2017, show that Plaintiff's shoulder was significantly improved after surgery, and Plaintiff testified that his shoulder is 80% improved (Tr. 34-35).

Plaintiff stresses that Dr. Wilson's treatment notes all conclude with the observation that Plaintiff is totally disabled (Doc. 27 at 14).   But at Plaintiff's December 14, 2017 appointment, the orthopedic surgeon noted that Plaintiff had full extension in his left knee; stable range of motion, full extension, and full strength in his right shoulder; and a "good ability to straight leg raise" despite low back pain and "no evidence of lumbar radiculopathy." (Tr. 330).   Dr. Wilson clarified that Plaintiff is "disabled from his prior occupation," which Dr. Wilson knew was construction

(Plaintiff saw him three days after his accident, and Dr. Wilson was his doctor throughout his worker's compensation case, which settled in early 2017); he did not opine that Plaintiff was disabled from all work (*Id*.).  Additionally, whether Plaintiff is disabled is a legal conclusion reserved for the Commissioner.  *See Cianfranti v. Comm'r of Soc. Sec.*, No. 2:20-cv-24-FtM-MRM, 2021 WL 973494, at *4 (M.D. Fla. Mar. 16, 2021).

The ALJ recounted these records (albeit briefly), including the October 2017 Medical Source Orthopedic Questionnaire, on which Dr. Wilson wrote that Plaintiff had lower back pain with radiculopathy, right shoulder arthroscopy, and had a limited range of motion in his right shoulder and lumbar spine (Tr. 23, 317-18).  The ALJ found the questionnaire unpersuasive, characterizing it as "generally unreadable." (R. 23).  To Plaintiff, this is evidence of "the ALJ's inadequate and minimal consideration of the medical records in this case," because the ALJ apparently did not notice that the agency contacted Dr. Wilson's office in February 2018 about the "unreadable" portion of his questionnaire (Doc. 27 at 14).  But this is harmless error, if anything, as Dr. Wilson's office clarified that Plaintiff's grip strength was 4 out of 5, his lower extremity strength was 4 out of 5, and Plaintiff was capable of fine and gross manipulation with his upper extremities (Tr. 72).  *See, e.g.*, *Kemp v. Astrue*, 308 F. App'x 423, 426 (11th Cir. 2009) ("[A]s to whether to the ALJ erred in asserting that Kemp never reported mental health symptoms to the VA, any factual mistake the ALJ made is harmless in light of the rest of the evidence."); *Brown v. Comm'r of Soc. Sec.*, 459 F. App'x 845, 846 (11th Cir. 2012) ("Finally, although the ALJ erroneously found that Brown had not sought treatment for her mental health issues over an eighteen-year period prior to 2007, this error was

harmless because the remaining evidence provided a substantial basis for the ALJ's conclusion.").

Instead, the ALJ found Drs. Buffingham and Chang's RFC assessments persuasive: "Although the undersigned, giving claimant every benefit of the doubt, restricts the claimant to sedentary work, finds these assessment persuasive.  Drs. Buffingham and Chang each reviewed the available evidence, cited to specific portions of that evidence to support their conclusions, and provided specific function-by-function limitations." (Tr. 23).  And "slightly persuasive" to the ALJ was the 2017 opinion of independent medical examiner Alvin Bregman, M.D., who, in connection with Plaintiff's worker's compensation case in New York, found Plaintiff capable of light duty work (Tr. 274-75).

Plaintiff points out two issues with Dr. Bregman's report: a page is missing (page two), and the ALJ erroneously refers to Dr. Bregman as a treating (rather than an examining) physician (Tr. 23).  These arguments are unavailing.  Pages three and four of the report are in the record and contain Dr. Bregman's diagnoses and disability evaluation (Tr. 273), and Plaintiff – who presumably was provided a copy of the evaluation in connection with his worker's compensation case – has not provided any argument as to what was on the missing page (Tr. 274).  *See Farnstrom v. Comm'r of Soc. Sec.*, No. 6:17-cv-619-Orl-37DCI, 2018 WL 1800851, at *13 n.7 (M.D. Fla. Mar. 29, 2018) (finding ALJ's decision was based on full and fair record even though one page was missing from medical record, because plaintiff did not argue what was on missing page, and record contained significant portion of report).  Additionally, under the

revised regulations, treating physicians are afforded no particular deference, *see Harner*, No. 21-12148 (11th Cir. June 27, 2022); that the ALJ referred to the doctor as a treating physician is harmless error.

Finally, to the extent Plaintiff argues the ALJ posed an incomplete hypothetical question to the VE, this fails. As discussed, substantial evidence supports the RFC and the ALJ's consideration of the evidence, and the ALJ is not required to include unsupported limitations in his hypotheticals. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004) (finding that "the ALJ was not required to include findings in the hypothetical that he had properly rejected as unsupported.").

## B. Plaintiff's Subjective Complaints

Plaintiff's next argument is that the ALJ's consideration of Plaintiff's testimony and his subjective complaints failed to comply with Eleventh Circuit case law and 20 C.F.R. § 404.1527. The Commissioner responds that the ALJ properly considered the record evidence in evaluating Plaintiff's subjective complaints of disabling symptoms.

The Eleventh Circuit has crafted a pain standard to apply to claimants who attempt to establish disability through their own testimony of subjective complaints. The standard requires evidence of an underlying medical condition and either (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition, or (2) that the objectively determined medical condition is of such a severity that it can reasonably be expected to give rise to the alleged pain. *See Holt v. Sullivan*, 921 F.2d 1221 (11th Cir. 1991). When the ALJ decides not to credit a

claimant's testimony as to his pain, he must articulate explicit and adequate reasons. *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995).

Social Security Ruling 16-3p cautions that "subjective symptom evaluation is not an examination of an individual's character." *Id.* Adjudicators, as the regulations dictate, are to consider all the claimant's symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence in the record. *Id.* The regulations define "objective evidence" to include medical signs shown by medically acceptable clinical diagnostic techniques or laboratory findings. 20 C.F.R. § 404.1529. "Other evidence," again as the regulations define, includes evidence from medical sources, medical history, and statements about treatment the claimant has received. *See* 20 C.F.R. § 404.1513. Subjective complaint evaluations are the province of the ALJ. *Mitchell v. Comm'r of Soc. Sec.,* 771 F.3d 780, 782 (11th Cir. 2014).

Here, the ALJ relied on largely boilerplate language in assessing Plaintiff's subjective pain complaints:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(Tr. 22).  This language directly addresses the Eleventh Circuit's pain standard and is not improper *if* supported by substantial evidence. *See Danan v. Colvin*, 8:12-cv-7-T-27TGW, 2013 WL 1694856, at * 3 (M.D. Fla. Mar. 15, 2013).

Here, it is. The ALJ summarized Plaintiff's testimony regarding his limitations. Ever since falling off the cement truck, Plaintiff "experienced significant pain in his back, foot, ankle, and shoulder; daily swelling in his foot; as well as medication-related side effects." (Tr. 22). Because of this, Plaintiff testified and the ALJ recounted, he is "limited to sitting for only 15-20 minutes and walking 3-4 blocks at a time and lays down 2-3 hours per day." (*Id*.) Next, the ALJ summarized the medical evidence, which included Plaintiff's complaints of subjective symptoms and pain, and formulated an RFC that is supported by substantial evidence (as explained in the previous section). Along the way, the ALJ articulated adequate reasons for not giving full weight to the Plaintiff's complaints of pain. Namely, Dr. Bregman indicated Plaintiff could perform light duty work (Tr. 274); Drs. Buffington and Chang found that Plaintiff could perform light exertional work with postural restrictions (Tr. 75, 364); Dr. Wilson's records showed a much-improved right shoulder, full extension in Plaintiff's left knee, and diffuse tenderness in his lower back but a "good ability to straight leg raise" (Tr. 330); and Dr. Sidhom mentioned Plaintiff's had no motor weakness or atrophy, intact coordination, and only a slight antalgic gait (Tr. 386-89).[5] Plaintiff's second argument fails.

---

[5] The undersigned does not address Plaintiff's one-sentence contention that the ALJ erred by failing to discuss his daily activities. He cites no evidence or case law and has waived the argument.

**V.      Conclusion**

Accordingly, after consideration, it is hereby

ORDERED:

   1.  The decision of the Commissioner is affirmed.

   2.  The Clerk is directed to enter final judgment in favor of the Defendant and

close the case.

     **ORDERED** in Tampa, Florida, on July 6, 2022.

SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE